## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AMARI KIMBRO, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | Case No. CIV-22-1003-PRW |
| STATE OF OKLAHOMA ex rel. ) | |
| OKLAHOMA HOUSE OF ) | |
| REPRESENTATIVES, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Before the Court is Defendant State of Oklahoma ex rel. Oklahoma House of Representatives' Motion for Summary Judgment (Dkt. 25). This matter is fully briefed, and for the reasons that follow, the Motion (Dkt. 25) is **GRANTED**.

### *Background*[1]

This case arises from alleged racial discrimination and retaliation. Plaintiff Amari Kimbro was employed as a Legislative Assistant for the Oklahoma House of Representatives (the "House") from January 22, 2019, until her employment was terminated on June 2, 2021. Throughout her employment with the House, several performance issues were documented. In November of 2019, Representative Regina Goodwin, one of Kimbro's assigned representatives, submitted a long and detailed list of complaints about Kimbro's performance to the human resources manager at the time.

---

[1] This section is based on the undisputed facts as described in the parties' briefs.

Kimbro was subsequently reassigned to two different representatives. In December of 2019, the Legislative Assistant Supervisor and Parliamentarian at the time, C.J. Calvin, sent her an email informing her that it was improper for her to take time off without first following the proper procedure for taking time off, that it was improper for her to consistently submit late time sheets, and that some time that she had submitted working offsite was expressly disallowed by House policy. In October of 2020, Jason Sutton, the Director of Operations and Administration for the House, investigated Kimbro (and others) for timecard theft. At some point not specified by the parties, a constituent of Representative Jason Lowe left a voicemail for Sutton, complaining of Kimbro's attitude and lack of professionalism during a conversation with the constituent. And finally, on April 21, 2021, Kimbro was perceived to be involved in an unlawful protest that took place during a legislative session of the House.

Some of the details surrounding the protest are relevant to this action. On April 21, 2021, protestors supporting the Black Lives Matter movement entered the gallery of the House while a legislative session was taking place on the floor. The protestors shouted profanities and obscenities, so they were asked to leave due to the interruption of the ongoing session. Kimbro left her office to watch and proceeded to take a video of the protest. When the protest escalated, Kimbro approached some of the protesters, referring to them by name, and asked them to leave. Kimbro then posted the video that she had recorded onto her Facebook page and tagged an organizer of the protest in her post, all while on the clock.

Kimbro was terminated on June 2, 2021. Following her termination, Kimbro filed a charge with the Equal Employment Opportunity Commission alleging that the House discriminated and retaliated against her based on her race. Upon the EEOC's issuance of a right-to-sue letter, Kimbro filed suit against the House, alleging race discrimination and retaliation in violation of Title VII, 42 U.S.C. § 1981, and Oklahoma public policy (*See* Dkt. 1). The House now moves for summary judgment on Kimbro's claims.

### *Legal Standard*

Rule 56(a) of the Federal Rules of Civil Procedure requires "[t]he court [to] grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In considering a motion for summary judgment, a court must view all facts and reasonable inferences in the light most favorable to the nonmovant.[2] Courts are not to weigh the evidence and determine the truth of the matter asserted, but instead are to determine only whether there is a genuine dispute for trial before the fact-finder.[3] A fact is "material" if, under the substantive law, it is essential to the proper disposition of the claim.[4] A dispute is "genuine" if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue for either party.[5]

When, as here, the nonmoving party has the ultimate burden of persuasion at trial, the moving party "has both the initial burden of production on a motion for summary

---

[2] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citations omitted).

[3] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[4] *Id.* at 248.

[5] *Id.*

judgment and the burden of establishing that summary judgment is appropriate as a matter of law."[6] "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial."[7] "Once the moving party points out the absence of evidence to create a 'genuine issue' of a 'material fact' on which the non-moving party bears the burden of proof at trial, . . . [t]he non-moving party must set forth specific facts showing there is a genuine issue for trial."[8]

*Analysis*

I.    **Section 1981 Claim**

Kimbro first alleges that the House discriminated and retaliated against her based on her race in violation of 42 U.S.C. § 1981. But "§ 1981 does not provide a vehicle for remedying racial discrimination and retaliation in cases brought against state actors."[9] Instead, such claims must be brought under § 1983.[10] Because the House is a state agency, Kimbro's claims under § 1981 against it are not permissible as a matter of law.

---

[6] *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002*), as amended on denial of reh'g* (Jan. 23, 2003) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

[7] *Id.*

[8] *Otis v. Canadian Valley-Reeves Meat Co.*, 884 F. Supp. 446, 449–50 (W.D. Okla. 1994), *aff'd*, 52 F.3d 338 (10th Cir. 1995) (citing *Anderson*, 477 U.S. at 248).

[9] *Hannah v. Cowlishaw*, 628 F. App'x 629, 632 (10th Cir. 2016) (unpublished) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 705, 735 (1989)).

[10] *Jett*, 491 U.S. at 735 ("We hold that the express 'action at law' provided by § 1983 for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and

In response, Kimbro suggests that the Court should grant her leave to amend this claim to one brought under § 1983, citing *Bolden v. City of Topeka*.[11] But a response to a motion for summary judgment is not the proper vehicle for requesting leave to amend a pleading.[12] And even if Kimbro had properly requested leave to amend, such amendment would be futile. States—and state agencies—are entitled to sovereign immunity[13] unless Congress has abrogated the states' immunity, or the state has waived it.[14] The Supreme Court has held that § 1983 did not abrogate states' sovereign immunity,[15] and states are not "persons" under § 1983.[16] Further, Oklahoma has not waived its sovereign immunity for § 1983 claims.[17] As such, even if Kimbro were granted leave to amend her complaint to

---

laws,' provides the exclusive federal damages remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor.").

[11] 441 F.3d 1129 (10th Cir. 2006).

[12] *See* LCvR 15.1; *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("It is well-settled under our cases that these drive-by requests to amend the complaint do 'not rise to the status of a motion.'" (quoting *Glenn v. First Nat'l Bank*, 868 F.2d 368, 370 (10th Cir. 1989))).

[13] *Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).

[14] *Green v. Mansour*, 474 U.S. 64, 68 (1985) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)).

[15] *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

[16] *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989).

[17] *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (citing *Ramirez v. Okla. Dep't of Mental Health*, 41 F.3d 584, 589 (10th Cir. 1994), *overruled on other grounds by Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186 (10th Cir. 1998)); *Berry v. Oklahoma*, 495 F. App'x 920, 921 (10th Cir. 2012) (unpublished) ("Oklahoma has not consented to be sued in federal courts." (citing OKLA. STAT. tit. 51, § 152.1)).

reframe her claims to ones brought under § 1983, her amendment would be futile because the House would be entitled to sovereign immunity for her damages claim.[18]

The House is therefore entitled to summary judgment on Kimbro's claims brought under 42 U.S.C. § 1981.

## II.    Title VII Claims

Kimbro also alleges that the House discriminated and retaliated against her based on her race and association with the Black Lives Matter movement in violation of Title VII.

### A. Discrimination

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]"[19] "[A] plaintiff bears the ultimate burden of proving that her employer intentionally discriminated against her."[20] This can be done by using either direct or circumstantial

---

[18] In its Reply, the House acknowledges the *Ex Parte Young* exception to Eleventh Amendment immunity. Def.'s Reply (Dkt. 38), at 6. The House correctly notes that Kimbro is not seeking injunctive relief, but also, Kimbro has only sued the House, which is a state agency. Because "the Eleventh Amendment bars federal court jurisdiction over a state agency for both money damages and injunctive relief," simply reframing her claim to one brought under § 1983 would not solve the problem. *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1196 (10th Cir. 1998).

[19] 42 U.S.C. § 2000e-2(a)(1).

[20] *Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019) (citing *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008)).

evidence.[21] When using circumstantial evidence, the three-step *McDonnell Douglas* framework applies.[22] Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of race discrimination.[23] Then, if the plaintiff meets this burden, the burden shifts to the defendant to provide a "legitimate, nondiscriminatory reason for its actions."[24] If the defendant can do so, the burden shifts back to the plaintiff to "show that the defendant's explanation was merely pretextual."[25]

Kimbro has not identified any direct evidence of discrimination, so the *McDonnell Douglas* framework applies. In its Motion, the House sets forth the "general recitation" of the prima facie showing, which requires a showing that: (1) the plaintiff is a member of a protected class, (2) she suffered an adverse employment action, and (3) the challenged action occurred under circumstances giving rise to an inference of discrimination.[26]

---

[21] *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017) (citing *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013)).

[22] *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–07 (1973)).

[23] *DePaula*, 859 F.3d at 969 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981) and *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 539–40 (10th Cir. 2014)).

[24] *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).

[25] *Id.* (citing *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) and *Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 900 (10th Cir. 2017)).

[26] *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011) (citing *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800 (10th Cir. 2007)). *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 n.6 (10th Cir. 2000) (stating that this more general recitation may "be helpful when addressing discrimination claims that either do not fall into any of the traditional categories (e.g., hiring or discharge) or present unusual circumstances."); *Plotke*, 405 F.3d at 1100 (explaining that the prima facie case is meant to be flexible, and can change depending on the facts of the case); *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1139 (10th Cir. 2024) ("We have articulated the elements of a prima facie Title VII

Kimbro does not contest the House's proffered standard, or offer an alternative articulation. Regardless, the focus of the prima facie case is whether the termination "occurred under circumstances giving rise to an inference of unlawful discrimination."[27] Circumstances giving rise to an inference of discrimination can be established a variety of ways, including "actions or remarks made by decisionmakers[,] . . .preferential treatment given to employees outside the protected class[,] . . . the timing or sequence of events leading to plaintiff's termination[,]"[28] or a showing that the plaintiff "was terminated and replaced in a job [s]he was qualified for[.]"[29]

The House concedes that Kimbro is a member of a protected class and suffered an adverse employment action when she was terminated. The parties dispute, however, whether Kimbro's termination occurred under circumstances giving rise to an inference of

---

discrimination claim differently from case to case," resulting in a "flexible approach." (internal citations omitted)).

[27] *Kendrick*, 220 F.3d at 1227 (quoting *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 253).

[28] *Plotke*, 405 F.3d at 1101 (quoting *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)).

[29] *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012) (citing *Perry*, 703 F.3d at 1140).

discrimination.[30] The Court will assume without deciding that Kimbro has made a prima facie showing because, as discussed below, she has failed to establish pretext.[31]

The House has provided legitimate, non-discriminatory reasons for Kimbro's termination. The House set forth evidence of the several performance issues that took place throughout Kimbro's employment as a Legislative Assistant. Additionally, the House proffered evidence supporting its belief that Kimbro was involved in the protest that violated Oklahoma law and disrupted the legislative session taking place at the House.[32] These reasons are sufficient to meet the House's "exceedingly light" burden at this step,[33] and Kimbro does not argue otherwise.

The burden shifts back to Kimbro to demonstrate that the House's proffered legitimate, non-discriminatory reasons are pretextual. The "relevant inquiry for determining pretext is 'whether the employer's stated reasons were held in good faith at

---

[30] On this point, the parties also dispute whether "associational" claims are viable. *Compare Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 273–74 (1st Cir. 2022) (holding that associational claims based on an employee's support of protected colleagues could be "technically viable") *with Joseph v. Bd. of Regents of the Univ. Sys. of Ga.*, 121 F.4th 855, 870–71 (11th Cir. 2024) (holding that associational claims are viable, but requiring that the discrimination must still be based on the plaintiff's own race or sex). But Kimbro does not meaningfully argue that her claim should be analyzed as an associational claim or provide any evidence that the topic of the protest—the Black Lives Matter movement—was relevant to her termination.

[31] *See, e.g.*, *DePaula*, 859 F.3d at 971 (assuming without deciding that the plaintiff made a prima facie showing); *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir. 1997) (same).

[32] *See* OKLA. STAT. tit. 21, § 302 ("Any person who alone or in concert with others willfully disturbs, disrupts or interferes with any session, meeting or proceeding of either house of the State Legislature . . . shall be guilty of a misdemeanor.")

[33] *See DePaula*, 859 F.3d at 970, 973 (citing *Williams*, 849 F.3d at 899–900).

the time of the discharge, even if they later prove to be untrue, or whether the plaintiff can show that the employer's explanation was so weak, implausible, inconsistent or incoherent that a reasonable fact find could conclude that it was not an honestly held belief but rather was subterfuge for discrimination.'"[34] A plaintiff can generally show pretext

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.[35]

The third method is often established using "evidence that [the plaintiff] was treated differently from other similarly-situated employees who violated work rules of comparable seriousness."[36] The facts are viewed from the viewpoint of the person making the decision to terminate the plaintiff.[37]

Kimbro's arguments regarding pretext are scarce. Presumably in an effort to demonstrate that the House's proffered reasons for her termination are pretextual, Kimbro has produced two pieces of evidence. The first is a letter written by Representative Jason Lowe, Chair of Oklahoma Black Legislative Caucus, to the Speaker of the House following

---

[34] *Simmons v. Sykes Enters., Inc.*, 647 F.3d 943, 947–48 (10th Cir. 2011) (quoting *Young v. Dillon Cos., Inc.*, 468 F.3d 1243, 1250 (10th Cir. 2006)).

[35] *Kendrick*, 220 F.3d at 1230 (internal citations omitted).

[36] *Id.* (citing *Aramburu*, 112 F.3d at 1404).

[37] *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001) (quoting *Kendrick*, 220 F.3d at 1231) (other citations omitted).

Kimbro's termination.[38] The letter states that Kimbro was "a great asset to the Oklahoma Legislative Black Caucus, The House Democratic Caucus, and the Oklahoma House of Representatives" and concludes with "strong support for Amari Kimbro and her reinstatement as a Legislative Assistant."[39] The second is an email written by one of Kimbro's assigned representatives at the time of her termination, Representative Denise Brewer. The email summarizes qualities a candidate to replace Kimbro must have, including "excellent work ethic, and a personality that makes [them] a 'whole' team again," suggesting that these were qualities possessed by Kimbro.[40] Kimbro argues that this evidence creates a genuine dispute of material fact as to whether her performance issues were a pretextual reason for her termination because it shows that her assigned representatives were happy with her work.

But Kimbro does not contest the various performance issues documented throughout her employment with the House. Likewise, Kimbro acknowledges that the behavior of the protestors on April 21, 2021, was inappropriate and in violation of Oklahoma law,[41] and that she posted a video tagging one of the organizers to her Facebook page while at work.[42] Further, Kimbro's evidence does not show that Sutton, the decisionmaker, was aware of Representatives Lowe and Brewer's opinions of Kimbro's

---

[38] Letter from Rep. Jason Lowe (Dkt. 37-5).

[39] *Id.*

[40] Email from Rep. Denise Brewer (Dkt. 37-6).

[41] Deposition of Amari Kimbro (Dkt. 25-1), at 188–89.

[42] *Id.* at 180–81.

performance prior to her termination, as both the letter and email were written after the fact.[43] Because these facts are viewed from Sutton's viewpoint, this evidence does not cast doubt on the House's proffered reasons for Kimbro's termination.[44]

Kimbro also argues that she was never "formally disciplined" for the performance issues. However, she provides no evidence suggesting that the House formally disciplined other employees for the same or similar infractions as a general matter of course, or that the House had a policy requiring formal discipline.[45] And, as noted by the House, Kimbro was subjected to some discipline—she was assigned to different representatives following Representative Goodwin's complaints about her performance and received an email addressing "areas of concern" regarding her violations of the House's timekeeping policies.[46]

Kimbro makes two additional arguments—though argued in the context of her prima facie showing—that the Court will consider.[47] First, she argues that a white

---

[43] *See id.* (dated June 23, 2021); Letter from Rep. Jason Lowe (Dkt. 37-5) (dated August 10, 2021).

[44] *See Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1169–70 (10th Cir. 2007) ("Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." (citations omitted)).

[45] *See Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) ("Unsubstantiated allegations carry no probative weight in summary judgment proceedings." (citing *Phillips v. Calhoun*, 956 F.2d 949, 951 n.3 (10th Cir. 1992))).

[46] *See* Email from C.J. Calvin (Dkt. 25-4).

[47] *See Orr v. City of Albuquerque*, 531 F.3d 1210, 1215 (10th Cir. 2008) (Courts do not "look at each piece of evidence in isolation; rather, in assessing whether plaintiffs have shown pretext, we are obligated to consider their evidence in its totality." (citations omitted)). *See also Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1218 (10th Cir. 2003)

Legislative Assistant, Tonya Pogue, partook in the same actions as Kimbro but was not terminated. Specifically, Kimbro argues that Ms. Pogue left her office, recorded the protest, and requested that the protesters leave. Kimbro suggests that the only difference between herself and Ms. Pogue is the fact that Kimbro knew one of the protesters by name. But that isn't accurate. The House provided a video showing that Ms. Pogue did leave her office to record the protest, and asked protesters to leave the House Chamber, but there is no evidence that Ms. Pogue posted the video to her Facebook page while on the clock, referred to any protestors by name, or tagged one of the organizers of the protest in a Facebook post, creating the perception that she was involved in organizing the protest. These situations are distinguishable, and "[d]ifferences in treatment that are . . . explained by a nondiscriminatory motive will not sustain a claim of pretext."[48] Moreover, Kimbro offers no evidence suggesting that Ms. Pogue had a similar disciplinary history to Kimbro or was otherwise similarly situated.[49]

---

(quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 286 (3rd Cir. 2000), which states that "evidence supporting the prima facie case is often helpful in the pretext stage and nothing about the *McDonnell Douglas* formula requires us to ration the evidence between one stage and another."); *Flowers v. United Parcel Serv., Inc.*, No. 22-2025, 2022 WL 17258431, at *5–6 (10th Cir. Nov. 29, 2022) (unpublished) (considering prima facie evidence combined with other pretext evidence).

[48] *See Kendrick*, 220 F.3d at 1232 (citing *E.E.O.C. v. Flasher*, 986 F.2d 1312, 1320 (10th Cir. 1992)).

[49] *See Aramburu*, 112 F.3d at 1404 ("A court should also compare the relevant employment circumstances, such as work histories and company policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." (citations omitted)).

Second, Kimbro argues that the House did not follow its typical policy of conferring with her designated representatives prior to her termination. Kimbro offers no evidence of any written policy establishing that this is the normal procedure in such situations. But seemingly in an attempt to argue that conferring with representatives is the House's unwritten practice or policy, Kimbro references the letter written by Representative Lowe, which states that "[Kimbro] was terminated without the proper notification and consent of her Members and without explanation for her abrupt termination."[50] The letter then goes on to state that "the caucus requests more transparency in any disciplinary action . . . . As Members have full discretion in the hiring process, [they] would also like to be included in the discipline and termination process."[51] Contrary to Kimbro's assertion otherwise, however, this letter does not demonstrate that representatives were usually consulted with prior to the termination of a Legislative Assistant as the Legislative Black Caucus is requesting such involvement in future termination decisions, to align with their "full discretion" in hiring decisions.[52]

Ultimately, taking all of the evidence and viewing it in the light most favorable to Kimbro, she has failed to show that there is a genuine dispute of material fact fit for jury

---

[50] Letter from Rep. Jason Lowe (Dkt. 37-5).

[51] *Id.*

[52] Kimbro also argues that Sutton terminated her because she "merely knew" one of the organizers. Pl.'s Resp. (Dkt. 37), at 9–10. However, this argument is purely conjecture, and "speculation . . . will not suffice for evidence." *Doan v. Seagate Tech., Inc.*, 82 F.3d 974, 977 (10th Cir. 1996).

determination on the issue of pretext. The House is entitled to summary judgment on Kimbro's racial discrimination claim under Title VII.[53]

### B. Retaliation

"Title VII retaliation claims require an employee to demonstrate that, but for her protected activity, she would not have faced the alleged adverse employment action."[54] The same framework for proving a claim of discrimination applies to claims for retaliation.[55] As for proving a prima facie case of retaliation, a plaintiff must show: "(1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."[56]

While Kimbro's Complaint asserts a claim for retaliation in violation of Title VII, Kimbro did not respond to the House's argument for summary judgment on her retaliation claim or present any evidence supporting a claim for retaliation. For this reason, Kimbro

---

[53] It is unclear from the Complaint whether Kimbro is also alleging a claim for race discrimination and retaliation under the Oklahoma Anti-Discrimination Act ("OADA"). And her Response fails to provide any clarity. Nonetheless, to the extent that she is alleging claims for race discrimination and retaliation under the OADA, the House is likewise entitled to summary judgment on those claims as the same analysis applies equally to claims under the OADA. *Jones v. Needham*, 856 F.3d 1284, 1292 (10th Cir. 2017); *Wolf v. Kum & Go, L.C.*, No. CIV-23-00754-PRW, 2024 WL 3706501, at *3 (W.D. Okla. Aug. 7, 2024).

[54] *Bennett v. Windstream Commc'ns, Inc.*, 792 F.3d 1261, 1269 (10th Cir. 2015) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013)).

[55] *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (citing *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012)).

[56] *Khalik*, 671 F.3d at 1193 (quoting *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (further citation omitted)).

has abandoned her retaliation claim and summary judgment in favor of the House is warranted on this claim.[57] And even if she hadn't abandoned this claim, Kimbro has not provided any evidence demonstrating that she engaged in a protected activity.

## III.    Oklahoma Public Policy

Kimbro asserts in her Complaint that she is also alleging violations of Oklahoma public policy. But similar to her claim of retaliation in violation of Title VII, Kimbro makes no mention of any Oklahoma public policy that has been violated and does not respond to the House's argument on this issue.[58] As such, the House is entitled to summary judgment on these claims, as well.

### Conclusion

For the reasons discussed above, Defendant House's Motion to Summary Judgement (Dkt. 25) is **GRANTED**. Accordingly, the House's pending Motion to Strike Plaintiff's Final Exhibit List (Dkt. 33) is **DENIED** as moot.

---

[57] *See Hinsdale v. City of Liberal*, 19 F. App'x 749, 768–69 (10th Cir. 2001) (unpublished) (affirming district court's decision to conclude claims were abandoned when they were not addressed in the plaintiff's response to the defendants' motion for summary judgment); *Stephens v. BMAG Mgmt. Co., LLC*, No. CIV-20-00306-JD, 2023 WL 5538304, at *12 (W.D. Okla. Aug. 28, 2023) (finding claim abandoned when the party failed to present evidence or discuss the claim in its response); *Midcon Data Servs., LLC v. Ovintiv USA, Inc.*, No. CIV-20-00674-PRW, 2023 WL 1827860, at *5 (W.D. Okla. Feb. 8, 2023) (same).

[58] *See Barker v. State Ins. Fund*, 40 P.3d 463, 468 (Okla. 2001) ("To prevail on a claim of wrongful discharge in violation of Oklahoma's public policy, a plaintiff must first identify an Oklahoma public policy goal that is well established, clear and compelling and articulated in existing constitutional, statutory or jurisprudential law." (citing *Clinton v. State ex rel. Logan Cnty. Election Bd.*, 29 P.3d 543, 546 (Okla. 2001), *overruled on other grounds in Kruchowski v. Weyerhaeuser Co.*, 202 P.3d 144 (Okla. 2008))).

**IT IS SO ORDERED** this 16th day of January 2025.

PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE